# Williams, Appellant, *v.* Fry.

*Trustees—Trustees ex maleficio—Stock—Purchase of stock—Agency—Insufficient evidence.*

In a suit in equity to require defendant to transfer to plaintiff certain shares of corporate stock, plaintiff alleged that defendant had been his agent for the purchase of the holdings of a third person in a certain corporation and that he had paid defendant a stipulated consideration, but that defendant had only transferred a part of the holdings of such third person which he had acquired, retaining 191 shares.   The evidence did not show that plaintiff had employed defendant as his agent for the purchase of the stock but merely showed an agreement by plaintiff for the purchase of those shares from defendant which had been admittedly delivered to plaintiff.   The lower court found that defendant was not plaintiff's agent for the purchase of the stock, and that there was no

fraud on defendant's part in retaining the shares which he held, and dismissed the bill. *Held,* no error.

Argued Jan. 13, 1916.   Appeal, No. 412, Jan. T., 1915, by plaintiff, from decree of C. P. No. 1, Philadelphia Co., June T., 1914, No. 5497, in equity, dismissing bill in equity to require a transfer of stock to plaintiff in case of Fred Williams v. Robert M. Fry and Runock Specialty Company, a corporation.   Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.

Bill in equity to require the transfer of certain shares of stock to plaintiff.

SHOEMAKER, J., filed the following opinion:

The complainant seeks to recover from the defendant, Robert M. Fry, one hundred and ninety-one shares of the capital stock of the defendant, the Runock Specialty Company, to have marked to his use the judgment of Jesse Pinder to use of Robert M. Fry v. Runock Specialty Company, of the above term and number; and a decree entered directing the defendant Fry to pay to complainant the sum of $1,276.51.   The bill also prays for the appointment of a receiver to take over the said shares of stock and the judgment until the title thereto is determined, that an injunction be issued, enjoining the said Fry from selling or disposing of the said shares of stock and judgment, and the Runock Specialty Company from transferring the said stock or paying the judgment to any other person than complainant, and that the said Fry, the defendant, be declared a trustee for complainant of said stock and judgment, and be directed to transfer the same to him.

The case was heard before a judge, sitting as a chancellor, on June 16, 1915, and the requests for findings of fact and conclusions of law were finally submitted on July 9, 1915, and with the answers of the court thereto are hereto attached.

From the pleadings and testimony taken, in the cause, the following are found as facts: .

1. The Runock Specialty Company, defendant, was incorporated under the laws of the State of Delaware on May 27, 1907, with an authorized capital of $100,-000.00 divided into 2,000 shares of the par value of $50 each, of which 1,200 shares have been issued.

2. That the said defendant company is registered in and transacts business in the State of Pennsylvania, at 1310-12 Callowhill street, Philadelphia.

3. That on August 20, 1913, and for a long time prior thereto, Jesse Pinder was the owner of 491 shares of stock of the Runock Specialty Company, and said company was indebted to him in the sum of $2,580.00 and accrued interest thereon in the sum of $276.51.

4. That on August 20, 1913, for said indebtedness the then president, Robert M. Fry, and Jesse Pinder, the then secretary of said company, executed three judgment notes whereby the said company agreed to pay to the said Jesse Pinder the sum of $1,580.00, $1,000 and $276.51 respectively. This action was ratified by the defendant corporation's board of directors.

5. That said Pinder was on August 20, 1913, the owner of said stock and the holder of said notes.

6. That some time prior to August 20, 1913, to wit, on or about June 20-27, 1913, the said Jesse Pinder being anxious to dispose of his interest in said company, informed the said Robert M. Fry that he would sell all his stock and claims against the said company for the sum of $5,000.00, and the said Fry undertook to dispose of the same for the said Pinder, who agreed to transfer the same to the said Fry or any person upon the receipt of $5,000.00.

7. That the defendant Fry endeavored to sell a part of said stock to various persons for a price in excess of the amount Pinder offered to sell for, but was unsuccessful until he obtained the complainant as a purchaser,

who, after negotiations commencing in July, 1913, and continuing until August 6, 1913, agreed to purchase for $6,000.00, and the agreement to have him made secretary of the company, the securities set forth in the following paper, written by Fry and executed by the complainant:

"Aug. 6, 1913.

"This is to certify that I have entered into an agreement with Robert M. Fry to purchase his option consisting of $15,000.00 worth of stock (300 shares at $50.00 par value) of Runock Specialty Co., and note or notes against said corporation for $1,000.00 for $6,000.00 cash. The same to be paid in ten days. The said Mr. Robert M. Fry agrees to have said company make me their secretary and treasurer at a salary of $50.00 fifty dollars per month.

           "FRED WILLIAMS.

"Witness

 "John A. Singley."

8. On August 13, 1913, Fry secured from Pinder the following:

"August 13th, 1913.

"I hereby authorize Robert M. Fry to insert the name of the party to whom note of Runock Specialty Company, dated July 24, 1911, to my order for one thousand six hundred and twenty-five ($1,625.00) dollars, is to be endorsed at such time as the name of said party may be determined, and I hereby authorize the delivery of said note upon the receipt for me by him of the sum of one thousand six hundred and twenty-five ($1,625.00) dollars. Also to insert the name of the party to whom note of said Runock Specialty Company, dated August 13, 1913, for nine hundred and fifty-five ($955.00) dollars, to my order, is to be endorsed at such time as the name of said party may be determined, and I hereby authorize the delivery of said note upon the receipt of nine hundred and fifty-five ($955.00) dollars at the time of the delivery of said notes. I also authorize the de-

livery of my four hundred and ninety-one (491) shares of the capital stock of said Runock Specialty Company, being certificates Nos. 42, 24, 23, 15, and 14 upon receipt of one thousand four hundred and twenty ($1,420.00) dollars in cash and note of Robert M. Fry, payable in one year for one thousand ($1,000.00) dollars at six per centum.

"(Signed) JESSE PINDER.    (Seal)

"Witness

"John G. Kaufman."

9. That the said Fry received from the complainant on August 18, 1913, the sum of $6,000.00 in cash, under the agreement certified to by complainant on August 6, 1913.

10. On August 20, 1913, Fry took from Pinder the 491 shares of stock and the two notes for $1,580.00 and $1,000.00 respectively, and paid Pinder $4,000.00 in cash and his note for $1,000.00, and the said Pinder accepted the same in full for said stock and notes, transferring 300 shares of the stock to Fred Williams, together with the note for $1,000, and the balance of 191 shares of stock and the note for $1,580.00 were transferred to Fry or his nominee.   Pinder did not know Williams in the transaction, had never heard of him as a purchaser, and completed the transaction in accordance with his offer to Fry to sell his entire interest in the company for $5,000.

11. On August 6, 1913, Fry entered into an agreement with one John A. Singley, in writing, as follows:
"Aug. 6, 1913.

"This is to certify that I have entered into an agreement to purchase from Robert M. Fry $1,000.00 worth of stock (20 shares at $50.00 par value) of the Runock Specialty Company for four hundred dollars ($400.00). The same to be transferred to my name in ten days.

"JOHN A. SINGLEY.

"Witness

"Fred Williams."

And on August 20, 1913, 20 shares of the 491 shares of stock held by Pinder were transferred to Singley, who is indebted to Fry for the consideration of $400.

12. Fry received from the Runock Specialty Company $276.51, for interest due Pinder and paid the same to Pinder, who allowed him a part thereof for his services: This sum was not included in the sale made by Pinder to Fry.

13. Fry did not have an option from Pinder to purchase Pinder's holdings and claims, which could be enforced by either party. It was merely an offer by Pinder to sell for $5,000 to any person, and Fry was not the agent of Pinder to sell.

14. That Pinder some time between his offer to Fry, in June, 1913, and the negotiations of Fry with Williams, agreed to sell $15,000 in par value of the Runock Specialty Company stock for $4,000 to a Mr. Frosch, a purchaser whom Fry believed he had obtained, and to transfer the balance of his, Pinder's stock and claims against the company to Fry for his note for $1,000 payable in one year after date.

15. Fry did not disclose to Williams what Pinder's holdings and claims were, but he did state to him that they stood Pinder over $16,000 including his services to the company for which he had not been paid, and the paper which Williams signed on August 6, 1913, certifies a statement in figures which aggregate $16,000, and also the statement that Williams purchased Fry's "option consisting of $15,000 worth of stock (300 shares at $50.00 par value)"
and
"note for $1,000."

16. The stock, while of the par value of $50 per share, cost Pinder $25 a share.

17. The 20 shares of stock sold by Fry to Singley were a part of Pinder's holding of 491 shares, but neither Williams nor Singley knew this and Fry at that time

had other shares of the stock of the Runock Specialty Company.

18. Part of the money received by Fry from Williams on August 18, 1912, was used by Fry to pay Pinder for his stock and claims in the settlement of August 20, 1913.

19. On August 6, 1913, the total cost to Pinder of his holdings in and claims against the Runock Specialty Company, (exclusive of interest of $276.51) was $14,-954.49.

20. Pinder had received from the company $500 worth of stock without charge, and 80 shares of stock (exclusive of 491 shares), and for which he paid $25 a share or $2,000, he gave to Fry in March, 1913, to induce him to stay in the company and manage it, so that Pinder had put in the company $16,454.49.

21. That Williams was present at the meeting of the Board of Directors of the Runock Specialty Company, on August 22, 1913, the minutes of which meeting were subsequently written by Fry. The minutes include the following:

"Mr. Robert M. Fry stated that he having had the option on Mr. Pinder's stock and notes had sold some of the stock together with a note of $1,000.00 held by Mr. Pinder against the company to Fred Williams, who was then present by courtesy extended a stockholder. Mr. Williams was duly introduced to the members of the board."

22. The minutes of the meetings of the board of directors of the Runock Specialty Company were written by Fry, subsequently placed in the hands of its attorney, and by him kept until required at a meeting of the board.

23. That Pinder and Williams, while secretary of the company, did not have the custody of the minute book, but signed the minutes of each meeting of the board after the same were typewritten, and although they did not read them, had opportunity to do so.

24. That in September, 1914, the following letter from Fry to Williams was received by Williams:

"PHILADELPHIA, September 8, 1914.

"Mr. Fred Williams

"922 North 48th street, Philadelphia.

"Dear Mr. Williams:

"By reason of the threatened proceedings on the part of Riehl Estate, I deem it no longer expedient for me to leave uncollected moneys due to me by the Runock Specialty Company. They owe me not only $1,580, being the amount of judgment note which I purchased from Jesse Pinder, but also a balance of $550 on salary prior to August, 1911, and they are also liable to me on my endorsement on note for $500, which is held by the West Philadelphia Bank.

"I beg to advise you that I have entered judgment on the judgment note which I hold and that suit has been instituted for the balance of $550.

"Yours truly,

"(Signed) ROBERT M. FRY."

25. That Williams was elected secretary of the Runock Specialty Company on August 22, 1913, and received a salary of $50 a month as such secretary from August, 1913, to December, 1914, approximately $800.

26. That the stock of the Runock Specialty Company has no market value.

## DISCUSSION.

The written evidence of the transaction between Fry and Williams shows a sale by Fry to Williams of an option belonging to Fry, and the sale, as specified in the writing of August 6, 1913, signed by Williams, consisted of 300 shares of stock (at $50 par value) of Runock Specialty Company and note or notes against said company for $1,000, for the consideration of $6,000; Fry agreeing to have the company elect Williams as secretary and treasurer at a salary of $50 per month.

Fry received from Williams $6,000 on August 18, 1913, and on August 20, 1913, delivered the stock and

note of Pinder to Williams, and subsequently had Williams elected secretary and treasurer of the company at $50 per month, which salary amounting to $800, for sixteen months' services, Williams received.

The minutes of the meeting of the directors of the corporation of August 22, 1913, show that a statement was made by Fry at the meeting, that he had sold some of Pinder's stock, on which he, Fry, had an option, to Williams, and the note of $1,000. Williams is noted as having been present at this meeting. The minutes of the succeeding meetings show that Williams was present and the minutes of the preceding meeting were read and approved.

Williams bases his claim upon the ground that Fry was his agent to buy Pinder's entire holdings, and as he received a benefit to himself, he holds what he received as trustee for Williams, namely, 191 shares of stock and a judgment note for $1,580.

The claim of Williams rests upon the assertion of Fry that Pinder's holdings cost him $16,000 and the paper of August 6, 1913, would give color to the belief that such a statement was made because the total of the stock at par value and the note aggregate $16,000. Singley, who was also a friend of Fry had, however as Williams' friend, taken part in the negotiations for the purchase from Fry of his option, was a witness to the paper of August 6, 1913, and Singley purchased on the same day, August 6, 1913, 20 shares of the Runock Specialty Company (par value $50) from Fry for $400. Williams was a witness to this agreement. It seems, therefore, that Williams must have known at the time he purchased the stock from Fry that it was worth not more than $20 a share, and that 300 shares could be purchased for $6,000 at that rate, while Fry also included in his sale for the above amount a note for $1,000 and an agreement to have Williams elected secretary and treasurer of the company. Fry carried out what the agreement called for, Williams became an officer of the company on Au-

gust 22, 1913, and did not object to the transaction until the fall of 1914, when he said he learned that the note for $1,580 held by Fry had been a part of Pinder's holdings.

As the complainant's claim is founded upon the alleged agency of Fry, and the evidence fails to sustain such a position, the fact that Fry stated Pinder had put $16,000 in the company, which was approximately true, cannot be held such a fraud upon the complainant as to hold Fry as a trustee for the stock purchased from Pinder and not sold by him to Williams; and Fry testified that his statement of what Pinder had put in the company included the services of Pinder since 1908 for which he had not received any compensation, and that he so told Williams.

### CONCLUSIONS OF LAW.

1. Equity has jurisdiction in this case upon the facts alleged in the bill: Bispham's Equity, Sec. 368; Goodwin Gas Stove & Meter Co.'s App., 117 Pa. 514; Penna. Co. for Ins. on Lives & Granting Annuities v. Franklin Ry. Co., 181 Pa. 40.

2. Equity having acquired jurisdiction over part of the transaction, will retain its jurisdiction and give complete relief, although in giving that relief it gives to some extent what the plaintiff might have secured in a common law action: Socher's App., 104 Pa. 609.

3. That the allegation in the bill that Fry was the agent for Williams in the purchase of Pinder's holdings in the Runock Specialty Company, has not been sustained by the evidence.

4. That the bill should be dismissed at the cost of the plaintiff.

The lower court dismissed the bill. Plaintiff appealed.

*Error assigned*, among others, was in dismissing the bill.

*G. Von Phul Jones,* for appellant.

*John G. Kaufman,* for appellee.

PER CURIAM, March 6, 1916:

We have not been convinced that the learned chancellor below erred in any of his findings of fact, and, on them, the bill of the appellant was properly dismissed. Nothing in the numerous assignments of error calls for a disturbance of the decree, which is affirmed at appellant's costs.